UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

IN RE. SUBPOENA TO                          )                    Misc. No. 8-101-P-S
TD BANK N.A.                                )

**RECOMMENDED DECISION ON MOTION FOR SANCTIONS**

This matter is addressed to TD Bank's desire to recover attorney fees arising out of its

compliance with a third-party subpoena issued in connection with a class action lawsuit pending

in the Middle District of Georgia, styled Perkins v. American National Insurance Company. The

defendant in the class action (identified as the respondent here) subpoenaed TD Bank[1] and its

New Jersey subsidiary, Hudson United Bank, to obtain information about certain customers. TD

Bank retained counsel in Georgia, New Jersey and Maine to manage its response to the

subpoenas. ANICO and TD Bank worked out the terms of compliance with the subpoenas,

which were eventually reduced to a single omnibus subpoena, and the Court was never called

upon to resolve any disputed issue related to the burdens imposed by the subpoena. However,

out of concern over a Maine non-disclosure law, the parties jointly moved for a protective order

from this Court, which necessitated opening this miscellaneous case file. Upon issuance of the

protective order, TD Bank supplied ANICO with the information requested in the subpoena, as

amended by the parties' mutual agreement. TD Bank now seeks an order requiring ANICO to

compensate TD Bank for the legal fees it incurred in connection with the subpoenas. I

recommend that the Court deny the motion.

---

[1]       At the time, TD Bank went by the name TD Banknorth. I have used TD Bank throughout to avoid
confusion.

### The Standard for Review of this Decision

There is a question as to the standard of review the Court should apply when reviewing this decision because the motion for fees is neither a non-dispositive pretrial matter falling under 29 U.S.C. § 636(b)(1)(A), nor among the matters excepted from that subsection and therefore subject to *de novo* review under § 636(b)(1)(B).  Determination of this motion by a magistrate judge is more properly an "additional duty" under § 636(b)(3).  If this were a pretrial motion seeking a discovery sanction, *de novo* review would not be called for.  Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1462 (10th Cir. 1988) (stating that magistrate judges "have general authority to order discovery sanctions" other than a sanction of dismissal).  On the other hand, if it were a post-trial application for attorney fees, *de novo* review would be appropriate.  See, e.g., Currier v. United Techs. Corp., No. 02-107-P-H, 2005 U.S. Dist. Lexis 10028, 2005 WL 1217278 (D. Me. May 23, 2005);  Adams v. Bowater Inc., No. 00-12-B-C, 2004 U.S. Dist. Lexis 9247, 2004 WL 1572697 (D. Me. May 19, 2004).  Here we have a motion seeking imposition of a fee-shifting award following on the heels of a joint motion for a protective order. The "joint" character of the motion that launched this miscellaneous case did not appear to preclude a magistrate judge from issuing the mutually desired protective order on referral from the District Court.  In any event, there was never any objection to the protective order.  That fact would seem to favor treating the instant motion, also referred by the District Court, as a "non-dispositive" matter that the Court can review for clear error.  Indeed, if the Georgia class action were pending in this district, the motion would have amounted to a non-dispositive pretrial discovery motion calling for deferential review.  However, it has been found by at least one court that *de novo* review should apply with respect to a magistrate judge's decision on a motion to compel/quash in a "miscellaneous case" commenced solely for purposes of subpoena

2

enforcement. <u>Ross v. Pioneer Life Ins. Co.</u>, No. 07-MC-18-TCK-FHM, 2007 U.S. Dist. Lexis 85406, *6-12, 2007 WL 4150957, *3-4 (N.D. Okla. Nov. 16, 2007) (treating a ruling on such a matter as effectively disposing of the miscellaneous case and therefore conducting *de novo* review related to a "dispositive" matter). <u>But</u> <u>see</u> <u>In re Out of Dist. Subpoena</u>, No. 1:08-MC-3, 2008 U.S. Dist. Lexis 67909 (W.D. Mich. Sept. 8, 2008) (reviewing for clear error magistrate judge's order on motion to compel third-party subpoena arising from out-of-district litigation). Although this case never involved a dispute necessitating an order on a motion to compel or quash, in the interest of caution,[2] I recommend that the Court perform a *de novo* review.

## Background

ANICO issues credit-life and credit-disability insurance that protects loans made by lenders like TD Bank and TD Bank's subsidiary, Hudson United Bank. ANICO was sued in a class action in the United States District Court for the Middle District of Georgia for allegedly failing to refund unearned premiums to insureds who paid off their insured loans early. Pursuant to a settlement agreement, and in order to identify class members, the court presiding over the class action ordered ANICO to gather information from lenders across the country who were named beneficiaries under the ANICO insurance policies. The order specified that ANICO needed to obtain information related to the payment status of insured loans, the best mailing address for the insureds, and the social security number and date of birth for the insureds, all in order to assist with obtaining the present address of insureds who may have changed address. (Order Concerning the Collection of Information Regarding ANICO Insureds, Schutz Aff, Ex. 1,

---

[2]      It would be most unfortunate for the parties to incur any additional legal fees in an appeal addressed to the scope of a magistrate judge's authority to resolve this matter.

Doc. No. 6-3.)  To comply with this order, ANICO issued subpoenas to numerous lenders, including TD Bank in Maine and Hudson United Bank in New Jersey.

The initial affidavits went out for service in March 2008 and requested production of the required information via one of three alternative means:  (1) keying the information into a password protected website, (2) producing the information electronically, such as by compact disk or email, or (3) producing the information in writing.   (See District of New Jersey Subpoena, Mot. Ex. A, Doc. No. 5-2;  District of Maine Subpoena, Mot. Ex. B, Doc. No. 5-3.) Also in March, the Middle District of Georgia issued a protective order pertaining to confidential consumer information.  (Mot. Ex. F, Doc. No. 5-7.)  In April, counsel for Hudson United served ANICO with a Rule 45(c)(2)(B) objection and counsel for TD Bank did likewise.  The objections are virtually identical.  Among the grounds for objection was that the subpoenas requested sensitive personal information about consumers that is protected under federal and/or state law. (Objections, Mot. Exs. C & D, Doc. Nos. 5-4 & 5-5.)  Counsel subsequently conferred and it was agreed that ANICO would issue a new "omnibus" subpoena to facilitate TD Bank's desire to coordinate the responses of both TD Bank and Hudson United from the District of Maine.[3] (May 19, 2008, Perkins Thompson Letter, Schutz Aff. Ex. 2, Doc. No. 6-4.)  Counsel for ANICO offered to seek an additional confidentiality order for entry in this District based on TD Bank's concern that it was needed "since the production will take place in Maine."  (Id.)  As to TD Bank's production, the only remaining objection appears to have involved concern over the production deadline stated in the May 12 omnibus subpoena, though it does not appear that TD Bank's failure to meet that deadline was of special concern to ANICO.  As of May 19, TD Bank

_____

[3]         The new subpoena is attached to the motion for fees.  The new subpoena requested production in the same format as had the earlier subpoenas.  (Mot. Ex. G, Doc. No. 5-8.)

was "working diligently" to produce the requested information.  (Id.)  As to the Hudson United production, TD Bank's counsel indicated that production would not be possible due to the manner in which Hudson United had archived the data, unless ANICO could provide the loan payoff date.  (Id.)  TD Bank's counsel prepared another objection dated May 19, 2008, and fired it off to ANICO's counsel, ostensibly to preserve its earlier objections, or possibly to support a forthcoming petition for attorney fees.  (Objections of TD Bank, N.A., to Subpoena, Mot. Ex. H, Doc. No. 5-9.)

In June 2008, TD Bank had completed compiling its responsive information and all that remained was the need to obtain a protective order from this Court.  (June 19, 2008, David B. McConnell E-Mail, Schutz Aff. Ex. 5, Doc. No. 6-7.)

On July 11, 2008, counsel for both parties filed their Joint Motion for Protective Order, which is the originating pleading in this matter.  The docket identifies TD Bank as the movant and ANICO as the respondent.  However, the docket reflects that ANICO filed its corporate disclosure statement on the date the joint motion was filed and that TD Bank filed its disclosure statement a few days later.  (Doc. Nos. 2 & 3.)  I issued the requested order on July 15, 2008. (Doc. No. 4.)  The parties agree that the protective order puts to rest any concern over compliance with federal and Maine confidentiality/non-disclosure laws.

On October 6, 2008, TD Bank filed the instant motion for fees.  (Doc. No. 5.)  The motion is supported by three affidavits.  An affidavit of Georgia counsel states there have been, to date, $4,493.00 in fees incurred for Sutherland Asbill & Brennan LLP's "efforts to respond to subpoenas served on TD Bank."  (Byrne Decl. ¶ 3, Doc. No. 5-11.)  An affidavit of New Jersey counsel states that $2,205.00 would cover the cost of Forman Holt Eliades & Ravin LLC's "efforts to respond to subpoenas."  (Cerra Decl. ¶ 3, Doc. No. 5-12.)  A third affidavit from

Maine counsel reports $4,079.96 for additional efforts by Perkins Thompson, Attorneys & Counselors at Law, to respond to subpoenas served on TD Bank. (McConnell Decl. ¶ 3, Doc. No. 5-13.)

The Sutherland billings reflect legal work performed as early as December 7, 2007, though the lion's share of work relates to March and April. (Sutherland Billings, Doc. No. 5-10.) The Sutherland billings also reflect entries for work performed for an entire "client group," not just TD Bank, as well as numerous entries not clearly associated with subpoena compliance. The appearance that these billings lend is that Sutherland was representing TD Bank and other lenders in connection with their potential third-party interest in the Georgia class action. In effect, Georgia counsel were positioned well ahead of time to ride herd on the eventual subpoenas issued to members of their client group.

The Forman Holt billings commence in April 2008. They reflect an effort to make a coordinated response, with counsel from all three states participating in the effort. (Forman Holt billings, Doc. No. 5-10.)

Similarly, the Perkins Thompson billings commence in April, but it is apparent that Maine counsel has taken a more central role for TD Bank with respect to subpoena compliance and the articulation of objections to the same. (Perkins Thompson billings, Doc. No. 5-10.)

### Discussion

TD Bank seeks $10,870.87 in attorney fees as a sanction because an order had to issue from this Court in order for it to comply with the subpoena without fear of recourse under Maine law and because it had to engage in negotiations with ANICO over that issue and others. (Mot. at 2.) TD Bank takes the position that ANICO's subpoena request imposed an "undue burden" under Rule 45(c)(1). (Id. at 5.)

>Per Rule 45(c)(1):
>
>A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

Fed. R. Civ. P. 45(c)(1).  Per Rule 45(c)(2), the party served with a subpoena may respond with a written objection.  Thereafter, on motion to compel or motion to quash, the court may resolve objections by compelling compliance as commanded in the subpoena, by modifying the subpoena and ordering compliance with the subpoena as modified, or by quashing the subpoena and alleviating the subpoenaed party from the burden of complying.  Fed. R. Civ. P. 45(c)(2)(B), (3).  When ruling on such a motion, the court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."  Fed. R. Civ. P. 45(c)(2)(B)(ii).  This requirement is consistent with the language that predated the 2005 amendments to the Rule, which provided that a third-party "shall be protected from significant expense resulting from the inspection and copying commanded."  First Am. Corp. v. Price Waterhouse LLP, 184 F.R.D. 234, 238 (S.D.N.Y. 1998) (quoting the earlier language of Rule 45(c)(2)(B)).  In First American Corporation, the District Court concluded that "the expenses incurred in lifting the legal impediments that prevent[] compliance with [a] Subpoena are reimbursable under Rule 45(c)(2)(B)."  Id. at 240.  The District Court awarded a portion of the fees incurred by a third-party for attorney services needed to remove legal barriers to compliance arising out of confidentiality laws protecting the third-party's customers, among other legal barriers.  Id. at 235-37.  The court recognized that "[a] nonparty's legal fees, especially where the work benefits the requesting party, have been considered a cost of compliance reimbursable

7

under Rule 45(c)(2)(B)."  Id. at 241.  However, the court also recognized that "[p]rotection from

significant expense does not mean that the requesting party necessarily must bear the entire cost

of compliance."  Id. (quoting Linder v. Calero-Portcarrero, 180 F.R.D. 168, 177 (D. D.C. 1998)).

The court identified the following factors:  "whether the nonparty actually has an interest in the

outcome of the case, whether the nonparty can more readily bear the costs than the requesting

party, and whether the litigation is of public importance."  Id. (quoting Linder, 180 F.R.D. at

177).  I would supplement this list with a reasonableness requirement that takes into

consideration the reasonableness of the efforts undertaken by the requesting party to address any

objections pertaining to legal impediments on its own dime, as well as the reasonableness of the

expenses incurred by the responding third-party in relation to the obstacle in question.

　　　　ANICO argues that TD Bank is not an innocent third-party because "[b]y not

informing American National when loans terminated early, and not informing its customers

about a potential refund, TD Bank helped perpetuate the issue in the Class Action lawsuit."

(ANICO Response at 2, Doc. No. 6.)  TD Bank never responds to this contention in its reply.

The presence of Georgia counsel as early as December 2007 suggests that TD Bank does have

some interest in the underlying class action.  ANICO also objects to the inclusion of any fees

incurred on account of Georgia counsel because they played no reasonable role in regard to

subpoena compliance.  (Id. at 10.)  TD Bank ducks this challenge as well, replying only that

ANICO "objects principally to the rates of Georgia counsel."  (TD Bank Reply at 5, Doc. No. 7.)

I consider ANICO's objection to be more fundamental than that.

　　　　Among other fees, TD Bank argues that it should be compensated for responding to the

subpoena issued in New Jersey, suggesting that the New Jersey subpoena was defective because

it targeted TD Bank, rather than Hudson United.  (Id. at 7.)  However, there is no evidence to

support the assertion that the New Jersey subpoena was defective because there is no evidence that it improperly targeted a Maine entity for production in Maine.  Rather, the parties' correspondence reflects that the parties agreed that TD Bank would handle Hudson United's response to the subpoena, if ANICO served TD Bank in Maine with a revised, omnibus subpoena that included the customers identified in the New Jersey subpoena.  In any event, it is apparent from the record that the New Jersey subpoena did not give rise to the parties' joint motion for a protective order from this Court, which would tend to take the New Jersey subpoena, and New Jersey counsel's fees, off the table.  As for Georgia counsel, the motion papers offer absolutely no explanation as to what essential function Georgia counsel served in relation to this miscellaneous case or the underlying negotiations on the issue of compliance. Removing New Jersey and Georgia counsels' fees from the table cuts the potential sanction by more than 50 percent.  Unfortunately for TD Bank, the record warrants even further reductions.

ANICO also contends that a fee-shifting sanction would be inappropriate here because, on the administrative end of the compliance effort, TD Bank's personnel were able to retrieve and produce the information demanded in the subpoena without any undue burden,[4] and because the confidentiality concern never ripened into a legal contest that the Court had to resolve for one side or the other.  (ANICO Response at 6-8.)  TD Bank replies that its Rule 45 objections, plus a notice it gave to ANICO of its intention to request fees, plus its request for a protective order, were enough to reserve its right to request a fee sanction under the Rules.  (TD Bank Reply at 3-4.)  These competing arguments invite a ruling from the Court on the technical question of what, exactly, is minimally required in order to preserve a fee-shifting sanction under Rule 45.  I

---

[4]       ANICO has paid the bill for TD Bank's in-house compliance effort.

9

decline that invitation.  Instead, I believe the motion can be resolved entirely on reasonableness grounds.

As the record in this matter will attest, third-party compliance with a subpoena can be quite burdensome at times.  Understandably, a commercial entity will often have subpoena compliance overseen by counsel, particularly where state law may impose obligations on it that compete with the obligations arising from the subpoena.  But while it is understandable to hire counsel to attend to such matters, that does not necessarily mean that an undue burden has been imposed or that any sanctionable conduct has occurred.  The question is whether the burden of paying for legal counsel in this case rose to the level of an "undue burden" and whether ANICO took "reasonable steps" to avoid the imposition of such a burden.  I conclude that TD Bank fails to demonstrate that ANICO's subpoena imposed an undue burden with regard to compliance or that ANICO failed to take reasonable steps to facilitate TD Bank's compliance.  The mere fact that compliance required a miscellaneous case to be opened in this Court to obtain a protective order does not, in my view, reflect that ANICO engaged in any sanction-worthy conduct, particularly where the "joint motion" was the product of a collaborative effort.

To be sure, the legal expense TD Bank incurred *is* out of proportion to what should have been necessary to facilitate its compliance with the subpoenas, especially because there was never any real fight over the administrative burden of actually retrieving and producing the information in question.  That legal expense, however, is not reasonably calculated at $10,870.87.  It is apparent from the billing sheets that, as of mid-April, TD Bank's counsel were all billing for telephone conferences with one another, writing and reviewing correspondence to and from one another, performing duplicative drafting work related to the objections, and reviewing one another's work product.  These inefficiencies further erode TD Bank's

presentation, even with respect to its Maine counsel.  Stripped of these billings, none of which were reasonably necessary to resolve the obstacle presented by the Maine confidentiality law, the remaining legal expense does not look like an undue burden at all.  This is particularly the case because TD Bank's own commercial conduct has some connection to the Georgia class action that spawned the subpoenas.  Why else would TD Bank retain Georgia counsel to monitor that action?

In summary, I recognize that counsel may have been needed in both Maine and New Jersey to attend to subpoenas served in each jurisdiction, but the expense associated with the reasonable, non-duplicative effort of Maine and New Jersey counsel does not rise to the level of an undue burden.  To rule otherwise would be to invite third-parties to request a fee-shifting award whenever they can flag one or more obstacles to compliance in a Rule 45 objection, regardless of whether the production requested in the subpoena is inherently reasonable or whether the subpoenaing party is attentive to the obstacles and makes a reasonable effort to overcome them.  That is not what the Rule 45 sanction is designed for and none of the precedent cited by TD Bank in support of its motion reflects such a severe rule.  If there is any basis in this record for a fee-shifting sanction, it arises exclusively from the need to obtain a protective order from this Court.  That need was answered in a cooperative and reasonable fashion by ANICO's counsel and was a simple and straight-forward matter of asking the Court to issue a protective order modeled on an order already issued by the District of Georgia.  In the big picture, I do not regard that additional imposition (a few hours of Maine counsel's time) as an undue burden that would justify a fee-shifting sanction.

**Conclusion**

For the foregoing reasons, I RECOMMEND that the Court DENY TD Bank's "Rule

45(c)(1) Motion for Attorneys' Fees" (Doc. No. 5).

NOTICE

A party may file objections to those specified portions of a magistrate
judge's report or proposed findings or recommended decisions entered pursuant to
28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought,
together with a supporting memorandum, and request for oral argument before the
district judge, if any is sought, within ten (10) days of being served with a copy
thereof.  A responsive memorandum and any request for oral argument before the
district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de
novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

December 1, 2008